F I L E D
CLERK OF COURT

2025 NOV 25 AM 10: 29

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0059-25** |
| | GPD Report No. 25-02071 |
| vs. | |
| | **DECISION & ORDER** |
| **JONOVIN JERMAINE MAURER CHIGUINA,** | **RE. DEFENDANT CHIGUINA'S MOTION TO SUPPRESS EVIDENCE AND DEFENDANT'S JOINDER IN DEFENDANT JONOVIN JERMAINE MAURER CHIGUINA'S MOTION TO SUPPRESS EVIDENCE** |
| DOB: 04/26/1999 | |
| **TYRONE KYLE QUINATA,** | |
| DOB: 10/27/1995 | |
| Defendants. | |

This matter came before the Honorable Alberto E. Tolentino on August 21, 2025, for a Motion Hearing. Defendants Jonovin Jermaine Maurer Chiguina and Tyrone Kyle Quinata ("Defendants") were present with counsel Alternate Public Defender Tyler Scott and Public Defender Stephen Hattori, respectively. Assistant Attorney General Samuel Alexander was present for the People of Guam ("People"). The court addressed Defendant Chiguina's Motion to Suppress Evidence and Defendant Quinata's Joinder in the Motion to Suppress. Following the hearing, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001, CVR 7.l(e)(6)(A) and CR1.1 of the Local Rules of the Superior Court of Guam. Having duly considered the parties' briefings, oral arguments, and the applicable law, the court now issues this Decision and Order **GRANTING** the Defendant's Motion to Suppress Evidence.

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 1 of 13

## BACKGROUND

### A. Allegations against Defendants Chiguina and Quinata in the Magistrate's Complaint

While responding to a report of a grass fire on Mt. Lamlam on January 24, 2025, Guam Police Department ("GPD") Officers noticed Defendants Chiguina and Quinata along a roadway in the surrounding area. *See* Magistrate's Compl, Affidavit (Jan. 25, 2025). Upon a search of Defendant Chiguina's person and additional search of the nearby area, officers uncovered a cigarette pack, lighter, "Sika Whistle," deer carcass, two shotgun shells, and a 12-gauge Remington shotgun. *Id.*

Defendant Chiguina was later charged via Indictment with POSSESSION OF A FIREARM WITHOUT FIREARMS IDENTIFICATION (As a 3rd Degree Felony) and PROTECTING WILD ANIMALS (POACHING) (As a Misdemeanor). *See* Indictment (Feb. 13, 2025). In the same Indictment, Defendant Quinata was charged with PROTECTING WILD ANIMALS (POACHING) (As a Misdemeanor) and VIOLATION OF A COURT ORDER (As a Misdemeanor). *Id.*

### B. Defendant Chiguina's Motion to Suppress and Defendant Quinata's Joinder

In anticipation for trial, Defendant Chiguina filed a Motion to Suppress Evidence ("Motion to Suppress") arguing that GPD Officers detained him without reasonable suspicion that a crime was committed or about to be committed. *See* Def.'s Mot. Suppress (June 2, 2025). The Defendant characterizes this detention as a violation of 8 GCA § 30.30 under Guam's Stop and Frisk Act. *Id.* at 5 – 6. As a result, the Defendant moves this court to suppress all evidence obtained in violation of his Fourth Amendment rights. *Id.* at 6.

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 2 of 13

Defendant Quinata subsequently filed his Joinder in Defendant Chiguina's Motion to Suppress ("Joinder") in which he also argues that he was "held beyond the 15 minute limit imposed by 8 § 30.30 without his consent." Joinder (July 29, 2025).

In the People's Opposition to the Motion to Suppress ("Opposition"), the People argued that the Defendants' detentions did not exceed the permissible duration based on "suspicious circumstances [that] gave the officers probable cause for arrest, even before uncovering the deer carcass and shotgun." Ppl.'s Opp'n (June 16, 2025).

## C. Defendants Chiguina's and Quinata's Motion Hearing

At the evidentiary hearing on the Motion to Suppress ("Motion Hearing"), the court heard testimony from three GPD Officers involved in the events leading up to the Defendants' arrests on January 24, 2025: GPD Officer Mark Santos Mangiliman; GPD Officer Rey Vermond Braga Mendiola; and GPD Officer Jerome Andrew. *See generally* Mot. Hr'g Mins. at 10:13:23 – 11:19:15AM (Aug. 21, 2025).

At the end of questioning, the Defendants argued that GPD Officers seized them in violation of Guam's Stop and Frisk Rule of fifteen (15) minutes as they were detained without reasonable articulable suspicion at 2:43 a.m. *See* Mot. Hr'g Mins. at 11:20:13 – 27:07AM. Because of this, both Defendants seek the suppression of shotgun shells, the shotgun, the deer carcass, and any incriminating statements as a result of the unlawful detentions. *Id.* The People oppose, stating that there was more than enough information to detain the Defendants; and that the physical evidence found would have been inevitably discovered by officers at the scene. *Id.* at 11:27:08 – 29:05AM. The court then took the matter under advisement. *Id.* at 11:32:51 – 33:15AM.

\\

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 3 of 13

## DISCUSSION

The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, [and] shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The Fourth Amendment's protections against unreasonable searches and seizures apply to Guam through § 1421b(c) of the Organic Act of Guam. *See People v. Yerten*, 2021 Guam 8 ¶ 17 (citing *People v. Johnson*, 1997 Guam 9 ¶ 4).

### A. Guam Police Department Officers seized Defendants Quinata and Chiguina within the meaning of the Fourth Amendment at 2:43 a.m.

Both Defendants argue that GPD unlawfully seized them for more than the fifteen minutes allowed under 8 GCA § 30.30; beginning when Officer Mangiliman made contact with both Defendants Chiguina and Quinata at 2:40 a.m. *See* Def.'s Mot. Suppress at 5 (June 2, 2025); *see also* Joinder (July 29, 2025). The first issue the court must consider is whether the Defendants were seized within the meaning of the Fourth Amendment.

The United States Supreme Court has long held that "[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *People v. Cundiff*, 2006 Guam 12 ¶ 21 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). For instance, a reasonable person would not believe they are free to leave through a police officer's use of physical force or show of authority to restrict a person's ability to walk away. *See People v. Chargualaf*, 2001 Guam 1 ¶ 21.

Defendant Chiguina states in his Motion to Suppress that "[n]o reasonable person surrounded by five officers, being questioned and ordered to produce items from his pockets,

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 4 of 13

would have felt free to leave." Def.'s Mot. Suppress at 5. The People oppose, indicating that "suspicious circumstances gave the officers probable cause for arrest, even before the deer carcass and shotgun." Ppl.'s Opp'n at 4.

As the first officer on scene, GPD Officer Mangiliman made contact with the Defendants at 2:40 a.m. to interview them together. *See* Mot. Hr'g Mins. at 10:18:15 – 21:38AM. Although they were free to leave, Officer Mangiliman did not mention this to either Defendant. *Id.* When the Officer Mendiola arrived on scene at 2:43 a.m., both Defendants were still together. *Id.* at 10:21:47 – 22:43AM; *see also* Def.'s Mot. Suppress, Ex. B. While Officer Mangiliman stated that his patrol car was parked behind the Defendants' vehicle when he arrived on scene, he also testified that nothing prevented them from driving forward if they chose to leave in their vehicle. *See* Mot. Hr'g Mins. at 10:29:10 – 29:25AM.

Although he was not the detaining or arresting officer for either Defendant, Officer Mangiliman testified that at the time Officer Andrew found the shotgun shells, both Defendants were not free to leave. *See* Mot. Hr'g Mins. at 10:26:36 – 26:56AM. As the detaining and arresting officer for Defendant Chiguina, Officer Andrew testified that he was not free to leave at 3:20 a.m.; when the two shotgun shells were uncovered from Chiguna's pocket. *Id.* at 11:14:30 – 15:20AM; *see also* Def.'s Mot. Suppress, Ex. D. As the detaining and arresting officer for Defendant Quinata, Officer Mendiola testified that he was not free to leave at 2:43 a.m.; well before 3:20 a.m. *Id.* at 10:45:59 – 47:31AM.

When reviewing the circumstances surrounding Defendant Quinata's seizure, Officer Mendiola testified that he escorted him away from Defendant Chiguina so that they can be interviewed separately. *See* Mot. Hr'g Mins. at 10:43:51 – 44:12AM. When asked whether he informed Defendant Quinata that he was free to leave at 2:43 a.m., Officer Mendiola testified

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 5 of 13

that he did not, because the officers detained the Defendants so that they could conduct their investigation. *Id.* at 10:44:16 – 44:35AM. When asked why Officers Mangiliman's and Mendiola's interviews with the Defendants lasted seventeen (17) minutes, between 2:43 a.m. and approximately 3:00 a.m., Officer Mendiola testified that both officers were trying "to get the Defendants' stories straight" regarding hiking up Mt. Lamlam at this time. *Id.* at 10:46:24 – 47:05AM. Additionally, the officers needed more time to run the Defendants' names for open cases and warrants in their system. *Id.*

Officer Mendiola advised Defendant Quinata of his *Miranda* rights at 3:05 a.m. after Officer Andrew informed him that he found a shotgun and bag beside the Defendants' vehicle. *See* Def.'s Mot. Suppress, Ex. B. However, Officer Mendiola did not arrest Defendant Quinata until 3:40 a.m. *Id.*

When looking at the circumstances surround Defendant Chiguina's seizure, Officer Mendiola testified that he was not free to leave at 2:43 a.m. because of Defendant Quinta's warrant in an unrelated case. *See* Mot. Hr'g Mins. at 10:51:54 – 52:45AM. During Defendant Chiguina's interview with Officer Andrew, he instructed Defendant Chiguina to empty his right pocket after reaching for it at around 3:05 a.m. *See* Def.'s Mot. Suppress, Ex. B. It is noteworthy that this instruction occurred after an initial request for Defendant Chiguina to empty his pockets when Officer Andrew noticed remaining items in his pocket. *Id.* In the Motion Hearing, Officer Andrew testified that he had done so because of the possibility of a weapon on the Defendant's person at three in the morning. *See* Mot. Hr'g Mins. at 11:01:05 – 01:32AM. After uncovering the two shotgun shells from his pocket, Officer Andrew requested assistance from Officer A.J. Fejeran to remain with Chiguina while he checked the area for the shotgun. *See* Def.'s Mot. Suppress, Ex. B. Although Officer Andrew states that he advised

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 6 of 13

Chiguina of his *Miranda* rights at about 3:20 a.m., he did not arrest him until 3:40 a.m. *See* Mot. Hr'g Mins. at 11:17:40 – 18:32AM. By 3:20 a.m., Officer Andrew had already conducted a pat-down of Defendant Chiguina and placed him in handcuffs. *See* Def.'s Mot. Suppress, Ex. B.

Although it could be inferred that a reasonable person would still have felt free to leave despite their compliance with an officer's requests to follow him to his patrol car and empty his pockets, a subsequent instruction to empty a pocket and later request for assistance from another officer to remain with such person to conduct a check of the area, would have begun the fifteen-minute clock. Looking at the totality of Defendant Quinata's and Defendant Chiguina's circumstances, no reasonable person would have felt free to leave at 2:43 a.m.

**B. Even if GPD Officers had reasonable articulable suspicion to detain Defendants Chiguina and Quinata, their detentions went beyond the fifteen (15) minutes allowed under 8 GCA § 30.30.**

Under Guam's Stop and Frisk Act, a peace officer may detain any person "under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense." 8 GCA § 30.10. Additionally, this Act states that:

> Detention pursuant to § 30.10 shall be for the purpose of ascertaining the identity of the person detained and the circumstances surrounding his presence abroad which lead the officer to believe that he had committed, was committing, or was about to commit a criminal offense, but such person shall not be compelled to answer any inquiry of the peace officer.

8 GCA § 30.20. However, a person's detention shall not be "longer than is reasonably necessary to effect the purposes of that section, and *in no event longer than fifteen (15) minutes.*" 8 GCA § 30.30 (emphasis added). Further, "[s]uch detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof." *Id.* When analyzing the legality of seizures, such as detentions under Guam's Stop and Frisk Act, the court utilizes the same standard of reasonable suspicion articulated in the United States Supreme Court case *Terry v. Ohio. See*

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 7 of 13

*People v. Taman*, 2013 Guam 22 ¶ 21. In *Terry*, the Court found that "reasonable suspicion" existed:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety....

*Terry v. Ohio*, 392 U.S. 1, 30 (1968). To determine whether such reasonable suspicion exists for a detention, courts review the contents and reliability of the information in the police's possession, through the perspective of "an objectively reasonable police officer." *People v. Yerten*, 2021 Guam 8 ¶ 17 (internal citations omitted).

For reasons set forth above, the court found that the Defendants' seizures began at 2:43 a.m. However, Officer Andrew testified that he arrested Defendant Chiguina at 3:40 a.m.; after he found the evidence of the bag and the shotgun. *See* Mot. Hr'g Mins. at 11:02:24 – 02:30AM. And according to Officer Mendiola, he arrested Defendant Quinata arrested by 3:30 a.m. *See* Def.'s Mot. Suppress, Ex. B.

Ascertaining the Defendants' identity is a sufficient purpose for detaining them under 8 GCA § 30.20. But based on Officer Mangiliman's and Officer Mendiola's reports and testimony, they ascertained both of the Defendants' identities around 2:43 a.m. Upon review of the police reports and officer testimony at the Motion Hearing, the information the officers possessed at the time they detained the Defendants included: (1) a dispatch call about individuals with headlamps coming down Mt. Lamlam; (2) the smell of smoke; (3) the Defendants' tired demeanor; and (4) a flashlight. Based on his recollection on the stand, the information he had was from an anonymous caller who said that he or she saw individuals with a flashlight who started the fire. *See* Mot. Hr'g Mins. at 11:13:02 – 14:32AM. Officer Andrew

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 8 of 13

testified that with the information the officers possessed from this call, the grassfire was "pinpointed at them." *Id.*

When looking at the contents and reliability of this information, it is still unclear what crime any of the officers had reasonable articulable suspicion to detain the Defendants for. According to Officer Mangiliman's testimony, he indicated that he did not suspect the Defendants of causing the grassfire at the time he was questioning them; or that he had any reasonable suspicion they were committing committed any other crime. *See* Mot. Hr'g Mins. at 10:29:55 – 30:17AM.

When asked about what criminal activity Officer Mendiola suspected them of conducting, he testified that he first believed it was for Arson. *Id.* at 10:44:40 – 46:01AM. Officer Mendiola acknowledged his familiarity with the policy that an officer is only permitted to detain a person he suspects has committed a crime for fifteen minutes. *Id.* at 10:51:40 – 51:53AM. Agreeing that Defendant Quinata's fifteen (15) minutes would have expired by 2:58 a.m., Officer Mendiola testified that he was not free to leave due to an active warrant; although this information was nowhere in his report as the warrant was for an unrelated case. *Id.* at 10:51:54 – 52:33AM.

Despite his earlier testimony that he had not suspected them of committing a crime at the time, Officer Andrew later testified that he only asked Defendant Chiguina to empty his pockets, and did not actually pat him down. *See* Mot. Hr'g Mins. at 11:10:08 – 11:11:22AM. In doing so, Officer Andrew reasoned that he wanted to talk to Defendant Chiguina personally and make sure he did not have any weapons on him despite both Defendants denying that they started the grassfire. *Id.* When asked why Officer Andrew thought that either Defendant was presently armed and dangerous, he testified that he "always assumes they are armed and

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 9 of 13

dangerous," especially at that time in the night and their location. *Id.* at 11:11:24 – 11:50AM. Officer Mangiliman also echoed this sentiment during his testimony that GPD Officers conduct pat-downs of anyone they counter for officer safety. *Id.* at 10:24:37 – 25:18AM.[1]

After reviewing all this information through a reasonably objective police officer's perspective, it is not likely that the officers had reasonable articulable suspicion that the Defendants committed, were committing, or were about to commit Arson, or any of the crimes charged in the Indictment, when GPD Officers detained the Defendants at 2:43 a.m. Even if the officers had reasonable articulable suspicion to detain the Defendants before their arrests, both detentions went beyond the fifteen (15) minutes allowed under 8 GCA § 30.30. Therefore, the Defendants Chiguina's and Quinata's detentions were unlawful.

### C. The evidence obtained from the unlawful detention must be suppressed as Fruit of the Poisonous Tree.

The last issue is whether the evidence derived from the unlawful detention of both Defendants must be suppressed under the Fruit of the Poisonous Tree Doctrine. *See Wong Sun v. United States*, 371 U.S. 471 (1963). In this case, Defendant Chiguina moved to suppress "all evidence obtained as a result of the unlawful detention and search, suppress all statements made by Defendant during the unlawful detention, and grant such other relief as this Court deems just and proper." Def.'s Mot. Dismiss at 6. On the other hand, Defendant Quinata joins in the

---

[1] The court repeats the longstanding policy in *Terry v. Ohio* regarding frisks or pat downs, which the Guam Supreme Court has adopted in several cases, that police officers may conduct them on a person whom they observe unusual conduct from which leads them reasonably to conclude in light of their experience that criminal activity may be afoot and that such person may be armed and presently dangerous. *See Taman*, 2013 ¶ 22 ("The language of 8 GCA §§ 30.10 and 30.20 reflect, and we hereby confirm, that Guam's Stop and Frisk Act utilizes the same standard for reasonable suspicion that is articulated in Terry v. Ohio and its progeny for courts to apply when analyzing the legality of investigative detentions, albeit those courts apply the standard under a constitutional analysis."); *see also People v. Tuncap*, 2014 Guam 1 ¶ 26 ("Patdowns of stopped suspects are permitted for officer safety, but only where the officer both has reason to believe that the suspect is armed and dangerous and limits the patdown to searching for weapons.").

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 10 of 13

Motion to Suppress but finds that dismissal is appropriate in this case. *See* Joinder (July 29, 2025).

Evidence may be suppressed under the Fruit of the Poisonous Tree Doctrine once the court determines "whether the challenged evidence was come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *People v. Cundiff*, 2006 Guam 12 ¶ 4 (internal citations omitted). In *this* case, the court must determine whether officers exploited the Defendants' unlawful detentions to come by the Defendants' incriminating statements, and other physical evidence, including the shotgun, deer carcass, shotgun shells, and whistle.

In its Opposition, the People argue that "[t]he discovery of the firearm and deer carcass would have happened regardless of the length of the detention of Defendant. Had Defendant left the scene within a minute of initially making contact with the officers, the officers would still have had ample reason to investigate the surrounding area." Ppl.'s Opp'n at 4. At the Motion Hearing, the People argue that the evidence found at the scene would have been inevitably discovered by officers that night. *See* Mot. Hr'g Mins. at 11:27:08 – 29:05AM.

Under the doctrine of inevitable discovery, the People may "rely on evidence that ultimately would have been discovered absent a constitutional violation[]" provided the government "can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]" *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009) (quoting *Nix v. Williams*, 467 U.S. 431, 443-44 (1984)) (internal quotations and punctuation omitted); *see also People v. Santos*, 2003 Guam 1 ¶ 56 (applying *Nix*).

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 11 of 13

The People state that because the Defendants were the only ones present when GPD Officers responded to an alleged grassfire, they would have found the gun and the deer carcass when conducting their investigation into the grassfire. *See* Mot. Hr'g Mins. at 11:27:08 – 29:05AM. As mentioned earlier, Officer Andrew stated that he conducted a check of the surrounding area *after* he instructed Defendant Chiguina to empty his pockets; and found the two shotgun shells. Without more, the court finds that the People have not proven by a preponderance of evidence that the GPD Officers would have inevitably obtained the Defendants' incriminating statements and discovered the shotgun, deer carcass, shotgun shells, and deer whistle without detaining the Defendants beyond the fifteen minutes permitted under 8 GCA § 30.30.

The court finds that any physical evidence or statements made by the Defendants that was discovered after 2:58 a.m. – the end of any lawful detention within the meaning of 8 GCA § 30.30 – must be suppressed.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 12 of 13

## CONCLUSION

For the reasons set forth above, the court hereby **GRANTS** the Defendant Chiguina's Motion to Suppress Evidence and Defendant Quinata's Joinder. The court hereby **ORDERS** that any physical evidence discovered by GPD Officers or statements made by the Defendants after 2:58 a.m. on the night of January 24, 2025, shall be **SUPPRESSED** at trial.

**SO ORDERED** this ____ **NOV 25 2025** ____.



_____
**HONORABLE ALBERTO E. TOLENTINO**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

AG, APD, PDSC

Date: 11/25/25 Time: 10:31am

Antonio Cruz
Deputy Clerk, Superior Court of Guam

Decision & Order Re. Defendant Chiguina's Motion to Suppress Evidence and
Defendant's Joinder in Defendant Jonovin Jermaine Maurer Chiguina's Motion to Suppress Evidence
*People v. Chiguana & Quinata*, CF0059-25
Page 13 of 13